IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-208-D

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| DAVID ELLIS, ) | |
| ) | |
| Defendant. ) | |

On June 9, 2022, David Ellis ("Ellis" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and for appointment of counsel [D.E. 168]. On May 10, 2023, Ellis, through counsel, moved again for compassionate release [D.E. 171] and filed exhibits in support [D.E. 172]. On May 24, 2023, the government responded in opposition [D.E. 175] and filed an exhibit in support [D.E. 176]. As explained below, the court denies Ellis's motions for compassionate release.

I.

On August 26, 2013, pursuant to a written plea agreement, Ellis pleaded guilty to possession of a stolen firearm (count two) and possession of an unregistered firearm (count three). See [D.E. 60, 61, 89]. On February 24, 2014, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR") [D.E. 70]. See [D.E. 77, 81, 82, 90]. After ruling on the objections, the court calculated Ellis's total offense level to be 35, his criminal history category to be IV, and his advisory guideline range to be 235 to 240 months' imprisonment. See PSR ¶ 59; Sent. Tr. [D.E. 90] 4–33. After thoroughly considering all relevant factors under 18

U.S.C. § 3553(a), the court sentenced Ellis to 120 months' imprisonment on count two and 115 months' consecutive imprisonment on count three, for a total sentence of 235 months' imprisonment. See [D.E. 77]; [D.E. 81] 2; Sent. Tr. 41–47. Ellis appealed. See [D.E. 83]. On October 23, 2014, the United States Court of Appeals for the Fourth Circuit dismissed Ellis's appeal in part and affirmed the judgment in part. See United States v. Ellis, 585 F. App'x 58, 58–59 (4th Cir. 2014) (per curiam) (unpublished); [D.E. 92, 93].

On June 19, 2015, Ellis moved pro se to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. See [D.E. 95, 99, 107]. On May 27, 2016, the court dismissed the motion. See [D.E. 108]. Ellis appealed. See [D.E. 112]. On October 18, 2016, the Fourth Circuit dismissed the appeal. See Ellis v. United States, 669 F. App'x 655, 656 (4th Cir. 2016) (per curiam) (unpublished); [D.E. 117, 118]. On January 9, 2019, Ellis moved pro se for sentence reduction under the First Step Act and for appointment of counsel. See [D.E. 128, 129]. On April 21, 2020, Ellis moved for compassionate release. See [D.E. 136]. On June 1, 2020, the court denied Ellis's motions. See [D.E. 137].

On June 25, 2020, Ellis moved pro se for compassionate release under the First Step Act and for appointment of counsel. See [D.E. 138]. On January 14, 2021, Ellis moved pro se again for compassionate release. See [D.E. 142]. On April 15, 2021, Ellis, through counsel, filed a memorandum and exhibits in support. See [D.E. 151, 152]. On April 27, 2021, the government responded in opposition and filed exhibits in support. See [D.E. 155]. On June 14, 2021, the court denied Ellis's motions. See [D.E. 157]. Ellis appealed. See [D.E. 158]. On August 31, 2021, the United States Court of Appeals for the Fourth Circuit dismissed the appeal. See United States v. Ellis, No. 21-6987, 2021 WL 6275916, at *1 (4th Cir. Aug. 31, 2021) (per curiam) (unpublished); [D.E. 166, 167].

2

## II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist, and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at

3

186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82; cf. U.S. Sent'g Comm'n, Adopted Amendments (Effective November 1, 2023), https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-November-1-2023 (last visited Oct. 23, 2023). U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children, incapacitated spouse, or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.

4

"[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

Ellis applied to his Warden for compassionate release. See [D.E. 171] 3; [D.E. 171-1] 1. On July 13, 2022, the Warden denied the release. See [D.E. 171] 3; [D.E. 171-1] 1. Therefore, the court addresses Ellis's motions on the merits. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

Ellis seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Ellis cites cognitive disabilities, mental health conditions, substance abuse, auditory hallucinations, diabetes, joint pain, polyneuropathy, lack of proper medical treatment at FCI Williamsburg due to COVID-19 lockdowns and staff shortages, and COVID-19 risk factors, including obesity, hypertension, high cholesterol, and other comorbidities. See [D.E. 171] 3–6; [D.E. 171-1] 1; [D.E. 172] 1; [D.E. 172-1] 1–4, 18–21, 24–25, 27, 37–40, 49, 51; see also PSR ¶¶ 34–40. Ellis also cites his ability to maintain a job, rehabilitation efforts, and his release plan. See [D.E. 171] 4, 7–8; [D.E. 171-2] 1–2; [D.E. 171-3] 1; [D.E. 171-4] 1–2.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). "To establish that the risk posed by COVID-19 presents an 'extraordinary and compelling reason' for release, a defendant must allege that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that his preexisting medical condition increases his risk of experiencing a serious, or even fatal, case of COVID-19." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023) (quotation omitted); see High, 997 F.3d at 185. This "inquiry is multifaceted

5

and must account for the totality of the relevant circumstances." Bethea, 54 F.4th at 832 (quotations omitted); see Hargrove, 30 F.4th at 198. Courts examine whether "an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility." Brown, 78 F.4th at 128 (quotation omitted); see Hargrove, 30 F.4th at 196.

Ellis claims he has cognitive disabilities, mental health conditions, substance abuse, auditory hallucinations, diabetes, joint pain, polyneuropathy, obesity, hypertension, high cholesterol, and other comorbidities, as well as a heightened risk of serious infection from COVID-19. See [D.E. 171] 3–6. Ellis has not demonstrated that these conditions prevent him from providing self-care. Furthermore, Ellis received the COVID-19 vaccine and three booster shots, which provides protection against COVID-19. See [D.E. 176] 1–2; see, e.g., United States v. Salas, No. 22-6371, 2023 WL 3918695, at *2 (4th Cir. June 9, 2023) (per curiam) (unpublished) ("[I]t is undisputed that Salas's risk is lowered due to his vaccination status."); United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release"); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from

6

COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Ellis from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46. Thus, reducing Ellis's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

Additionally, Ellis alleges that he is not receiving adequate medical treatment. See [D.E. 171] 1–2, 4–5. Ellis's medical records, however, indicate that he receives regular medical care. See [D.E. 176]. Ellis has received treatment for conditions existing before incarceration, like monitoring his diabetes and counseling for weight loss, and treatments for new conditions, like a skin infection that healed slowly due to his diabetes. See PSR ¶ 38; [D.E. 176] 9–36, 48–51. Ellis also had a neuropathy appointment on August 16, 2022. See [D.E. 176] 43.

Ellis has failed to show "a particularized risk of contracting the disease at his prison facility." Brown, 78 F.4th at 128 (quotation omitted). BOP houses Ellis at FCI Williamsburg. BOP has vaccinated 208 staff members and 1,624 inmates at FCI Williamsburg. See BOP, BOP COVID-19 Statistics, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited Oct. 23, 2023). BOP has set FCI Williamsburg to operational level 1, which corresponds to the lowest medical isolation rate and number of new community positive cases. See BOP, COVID-19 Modified

7

Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Oct. 23, 2023). BOP's aggressive vaccination efforts and robust COVID-19 procedures decrease Ellis's risk of contracting the disease at FCI Williamsburg. See id. Therefore, reducing Ellis's sentence because of his alleged risk factors and the general risk of COVID-19 in the prison environment does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Ellis's medical conditions, Ellis's rehabilitation efforts, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). The section 3553(a) factors, however, counsel against reducing Ellis's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Ellis is 63 years old and engaged in serious, violent criminal conduct in 2012. See PSR ¶¶ 6–11. Ellis possessed a stolen and unregistered firearm while kidnapping, assaulting, and seriously injuring his girlfriend and her mother. See id. During a subsequent standoff with police, Ellis continued to assault his girlfriend and threatened police officers. See id.; [D.E. 90] 6–33. While in custody, Ellis unlawfully attempted to influence his victims. See PSR ¶¶ 9–10. Moreover, Ellis is a violent recidivist with a history of horrific crimes against intimate partners. See id. ¶¶ 6–7, 14–28, 33. For example, Ellis has (1) held a box-cutter to his estranged wife's throat and threatened to kill her, (2) stabbed the same wife in the back with a knife and led her to a wooded area, and (3) killed his girlfriend's cat and assaulted her by repeatedly striking her in the head with a metal tire tool until she passed out. See id. Beginning at age 15, Ellis has convictions for burning an uninhabited dwelling, assault with a deadly weapon inflicting serious injury, driving under the influence, larceny, escape, assault inflicting serious injury, providing fictitious information to an officer, assault on a female, reckless driving to endanger, possession of cocaine, driving while impaired, habitual

8

misdemeanor assault (two counts), communicating threats, false imprisonment, assault with a deadly weapon inflicting serious injury, and habitual felon. See id. Ellis also had no work history. See id. ¶ 43.

Ellis has made some positive efforts. See [D.E. 171] 4, 7–8; [D.E. 171-2] 1–2; [D.E. 171-3] 1; [D.E. 171-4] 1–2. For example, Ellis completed numerous educational and vocational classes. See [D.E. 171] 4, 7; [D.E. 171-4] 1–2. Ellis also has an average to better than average work evaluation record. See [D.E. 171-2] 1–2; [D.E. 171-3] 1. The court has taken all of this information into account. See Concepcion v. United States, 142 S. Ct. 2389, 2403–04 (2022); Pepper, 562 U.S. at 491; United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); High, 997 F.3d at 187–91; Chambers, 956 F.3d at 671–75; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Although Ellis has taken some positive steps while incarcerated, Ellis has been sanctioned for serious misconduct including refusing a drug test (2021), disruptive conduct (2020), masturbating while staring at a female staff member (2019), and engaging in sexual acts (2016 and 2018). See [D.E. 151-3]; [D.E. 155-2].

The court has considered Ellis's risk for exposure to COVID-19, his medical conditions, his mixed record in federal custody, and his release plan. Cf. Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398 (4th Cir. 2019). Having considered the entire record, the BOP's actions to address COVID-19, the section 3553(a) factors, Ellis's arguments, the government's persuasive response, Ellis's horrific criminal conduct and criminal history, Ellis's serious misconduct while incarcerated, Ellis's rehabilitation efforts, and the need to punish Ellis for his serious criminal behavior, to incapacitate Ellis, to promote respect for the law, to protect society, and to deter others, the court declines to grant Ellis's motion for

9

compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Troy, 64 F.4th at 185; Reed, 58 F.4th 821–24; Roane, 51 F.4th at 551–52; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 168, 171].

SO ORDERED. This 23 day of October, 2023.

JAMES C. DEVER III
United States District Judge